IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RICKY BROUGHTON | ) | |
| | ) | |
| v. | ) | No. 3:05-0277 |
| | ) | JUDGE CAMPBELL |
| MAGNETIC TICKET & LABEL | ) | |
| CORPORATION | ) | |

MEMORANDUM

Pending before the Court is Plaintiff's Motion for Summary Judgment on the Issue of Liability (Docket No. 13) and Defendant's Motion for Summary Judgment (Docket No. 16). For the reasons stated herein, Plaintiff's Motion for Summary Judgment (Docket No. 13) is DENIED. Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED, and this case is DISMISSED.

FACTS

Plaintiff, Ricky Broughton, was employed by Defendant Magnetic Ticket & Label Corporation beginning in April, 2004 (Docket No. 19 at 1). The parties do not dispute that at the time of his employment, Plaintiff was in arrears in child support payments (Docket No. 23 at 1). As of January 13, 2004, Plaintiff was approximately $6,842.07 delinquent in his child support obligations (Docket No. 23 at 2). The parties also do not dispute that on August 10, 2004, a criminal contempt charge was issued against Plaintiff by the Juvenile Court for Davidson County, Tennessee (the "Juvenile Court") related to Plaintiff's child support obligations. The contempt sentence was suspended on the condition that Plaintiff complied with his support obligations going forward (Docket No. 19 at 4 and Docket No. 23 at 2). At the contempt hearing, Plaintiff was represented by appointed counsel, John Ford ("Ford") (Docket No. 19 at

14-15). On August 17, 2004, Child Support Services of Davidson County, Tennessee ("Child Support Services") filed a notice of wage assignment (the "Wage Assignment") with the Juvenile Court (Docket No. 23 at 2). On August 22, 2004, Defendant began deducting $55.23 from Plaintiff's paycheck pursuant to the Wage Assignment. On November 2, 2004, a compliance review hearing was held by the Juvenile Court which was attended by Ford, but not by Plaintiff (Docket No. 19 at 14-15 and Docket No. 23 at 3). At the hearing, Plaintiff's sentence was put into effect. Plaintiff was arrested on November 4, 2004 and incarcerated for approximately three weeks (Docket No. 23 at 3 and Docket No. 19 at 15). On November 11, 2004, Defendant sent a check in the amount of $607.53 to the Central Child Support Receipting Unit (the "Receipting Unit") for wages it had withheld pursuant to the Wage Assignment (Docket No. 19 at 6).

The parties dispute why Plaintiff's contempt sentence was put into effect. The parties also dispute whether Plaintiff told Defendant while he was in jail that he had been jailed because Defendant had not remitted his wages to the Receipting Unit. Defendant alleges that Plaintiff was held in contempt for eighteen violations of a 1994 support order issued by the Juvenile Court, and that Defendant had no obligation to garnish Plaintiff's wages prior to August 17, 2004. Defendant further alleges that at the time of the contempt hearing, Plaintiff's support obligations had grown to $8,153.74, and that Plaintiff was not jailed simply because of its failure to remit the wages it had deducted from Plaintiff's wages to the Receipting Unit until November 11, 2004. Defendant also alleges that Plaintiff called from jail, but disputes whether Plaintiff informed it that he was in jail because his assigned wages had not been remitted to the Receipting Unit. Plaintiff, on the other hand, alleges that the contempt for which he was jailed was Defendant's failure to comply with its statutory duty and send the deducted funds to the

Receipting Unit. Plaintiff also alleges that one month from the beginning of his employment with Defendant, Diane Jordan, Defendant's human resources employee in Nashville, told Plaintiff that Defendant was "going to start taking your child support out now" and that the following week Plaintiff saw deductions in his check for child support. In addition, Plaintiff alleges that he called Defendant from jail and informed Defendant that he was in jail because his child support payments were not being made. Furthermore, Plaintiff alleges that while he was in jail, he was exposed to persons with tuberculosis and assaulted by another inmate.

After Plaintiff was jailed, Plaintiff's wife contacted Ford and informed him that Plaintiff's pay stubs reflected that Plaintiff's child support obligations had been deducted from his paycheck (Docket No. 19 at 16). Ford obtained an emergency hearing on November 16, 2004, presented the Juvenile Court with Plaintiff's pay stubs, and Plaintiff was released from custody (Docket No. 19 at 17-18).

It is also undisputed that on November 9, 2004, prior to Plaintiff's release from jail, Plaintiff's employment with Defendant was terminated (Docket No. 19 at 9). Plaintiff learned of his termination on November 18, 2004 when Plaintiff's former supervisor, Ronnie Leonard ("Leonard"), communicated to Plaintiff that he was terminated for poor attendance and job performance (Docket No. 23 at 5). In addition, it is undisputed that on September 1, 2004, Leonard issued a written warning to Plaintiff for poor attendance, that Leonard and Plaintiff's Team Leader, Mary McKissack ("McKissack") talked with Plaintiff about his poor performance and attendance, and on October 13, 2004, Defendant extended Plaintiff's initial probationary period due to his poor attendance and job performance (Docket No. 23 at 4-5). Plaintiff alleges that he was terminated in retaliation for complaining about Defendant's alleged violations of its

statutory duty to make child support payments whereas Defendant alleges that Plaintiff was terminated because of poor job attendance and performance.

On February 25, 2005, Plaintiff filed a complaint in the Circuit Court for Davidson County, Tennessee against Defendant alleging negligence, retaliatory discharge in violation of the Tennessee Public Protection Act and at common law, conversion, outrageous conduct and negligent infliction of emotional distress (Docket No. 1). On April 5, 2005, Defendant removed Plaintiff's case to this Court based upon diversity jurisdiction pursuant to 28 U.S.C. §§1332 and 1441 (Docket No. 1). Plaintiff has filed a motion for summary judgment (Docket No. 13) on its claims of negligence, retaliatory discharge, outrageous conduct, and negligent infliction of emotional distress.[1] Defendant has also filed a motion for summary judgment (Docket No. 16) asserting that Plaintiff's claims should be dismissed under the doctrine of *"falsus in uno", "Falsus in Omnibus"* because Plaintiff has provided no admissible proof to support his theories. Defendant also argues that summary judgment should be granted on Plaintiff's claims of negligence, retaliatory discharge, outrageous conduct and intentional infliction of emotional distress.

SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d

[1]Plaintiff's Memorandum in support of its summary judgment motion indicates that Plaintiff has abandoned his claim for conversion (Docket No. 14 at 9).

461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## ANALYSIS

### 1. NEGLIGENCE CLAIM.

Plaintiff alleges summary judgment is appropriate on his negligence claim because Defendant was under a duty to deduct $55.23 from his paycheck. Plaintiff contends that not only did he tell Defendant to deduct the amount, but also, Defendant was under a court order to make the deductions.

Under Tennessee law, to bring a successful negligence claim, Plaintiff must establish: (1) a duty of care owed by the Defendant to him; (2) conduct by the Defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. Staples v. CBL & Associates, Inc., 15 S.W. 3d 83, 89 (Tenn. 2000).

With respect to the first element, whether the Defendant owed Plaintiff a duty of care is a question of law to be determined by the Court. Id. Duty is the legal obligation a defendant owes

to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. Id.

The Court finds that Plaintiff has not presented any legal authority for his assertion that Defendant owed him a duty to deduct $55.23 from his wages.

Tenn. Code Ann. §36-5-501 concerns assignment of income and income withholding for support. The relevant statutory language is as follows:

> 36-5-501. Income withholding. – (a)(1) For any order of child support issued, modified, or enforced on or after July 1, 1994, the court shall order an immediate assignment of the obligor's income, including, but not necessarily limited to: wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, profit sharing, interest, annuities, and other income due or to become due to the obligor. ...
>
> (g)(1) The assignment or any subsequent modification is binding upon any employer, person or corporation, including successive employers, fourteen (14) days after mailing or other transmission or personal service of the order from the clerk of the court, or from the department by administrative order of income assignment, pursuant to this section. ... The amount withheld shall be sent by the employer within seven (7) days of the date the person obligated to pay support is paid or the date such person is to be paid or the date the amount due such person is to be credited. ...
>
> (i) ... An employer shall be subject to a fine for a Class C misdemeanor if the income assignment is used as a basis to refuse to employ a person or to discharge the obligor/employee or for any disciplinary action against the obligor/employee or if the employer fails to withhold from the obligor's income or to pay such amounts to the clerk or to the department as may be directed by the withholding order. ...
>
> (p) ... If any employer, person, corporation or institution fails or refuses to comply with the requirements of this section, then that employer, person, corporation or institution is liable for any amounts up to the accumulated amount that should have been withheld. In addition, that employer, person, corporation or institution may be subject to a civil penalty to be assessed and distributed pursuant to the requirement of this subsection (p). ...
>
> (2) The civil penalty, when assessed and collected by the department of human services, shall be prorated among the children for whom the income assignment order was issued and with which the employer, person, corporation or institution failed to comply.

Tenn. Code Ann. §36-5-501 (emphasis added).

The statute provides no remedy or rights to an obligor against an employer who fails to abide by the terms of an income assignment. Rather, enforcement of the Assignment statute and remedies for non-compliance with an order of income assignment is vested with the commissioner of human services, who can assess civil penalties against a non-compliant employer. Tenn. Code Ann. §36-5-501(p)(2). Analogous cases regarding garnishee liability found under the Tennessee garnishment statutes support this interpretation of the Assignment statute as affording no rights to an aggrieved obligor. Under Tennessee law, a garnishment order enables a third party to enforce a judgment against or obligation of a judgment debtor. It does not vest the obligor with any rights against the garnishee. See, Smith v. Smith, 165 S.W. 3d 285, 293 (Tenn. Ct. App. 2004) (a "'garnishment is in the nature of an attachment of a debt due the judgment debtor from the garnishee; and, service of the garnishment upon the garnishee is a warning to the garnishee not to pay the debt but to answer the garnishment and hold the fund subject to the orders of the Court.'") (quoting Meadows v. Meadows, 1998 WL 116382 at *3 (Tenn. Ct. App. Nov. 2, 1988)). See also, Schlesner v. U.S., 246 F. Supp. 2d 1036, 1042 (E.D. Wis. 2003) (no cause of action exists against garnishee by judgment debtor where garnishee failed to pay out monies for support obligations in its possession in a timely manner.)

Thus, the Court finds that Plaintiff, as a matter of law, has failed to show that Defendant owed him a duty of care pursuant to the Wage Assignment. Furthermore, the Court finds that Plaintiff has failed to articulate the basis for the existence of any other legal duty or obligation owed by Defendant to Plaintiff to pay his child support obligations.

In addition, the Court finds that given the undisputed fact of the substantial arrearage of Plaintiff's support obligation as of January, 2004, Plaintiff cannot show that any delay by Defendant in remitting Plaintiff's wages to the Receipting Unit was the proximate cause of his incarceration (Docket No. 23 at 2).

Accordingly, Plaintiff's Motion for Summary Judgment against Defendant (Docket No. 13) on his negligence claim is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 16) on Plaintiff's negligence claim is GRANTED.

2. RETALIATORY DISCHARGE.

Plaintiff also argues that summary judgment is appropriate on his cause of action for retaliatory discharge because he meets all of the criteria for retaliatory discharge, both at common law and by statute.

Under Tennessee common law, an at-will employee "'generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision.'" Crews v. Buckman Laboratories Int'l, Inc., 78 S.W. 3d 852, 858 (Tenn. 2002) (quoting Stein v. Davidson Hotel Co., 945 S.W. 2d 714, 716-17 (Tenn. 1997)). Under the Tennessee "whistleblower" statute, it is unlawful to discharge an employee for refusing to participate in or remain silent about illegal activities. Tenn. Code Ann. §50-1-304.

To support his claim of retaliatory discharge, Plaintiff contends that he was illegally discharged for complaining about Defendant's failure to comply with the Wage Assignment. More specifically, Plaintiff alleges that he was fired within a few days of complaining to Defendant that he had been jailed because of Defendant's failure to make his child support

payments. Plaintiff also alleges that Defendant's reasons for his termination were merely a pretext to disguise Defendant's illegal activity.

The Court finds that Plaintiff has failed to show that he was discharged for refusing to remain silent about Defendant's allegedly illegal activity. While it is disputed whether Plaintiff complained to Defendant about its failure to remit his wages to the Receipting Unit prior to his discharge, there is no evidence to support Plaintiff's claim that he was terminated for refusing to participate in or remain silent about Defendant's failure to pay his child support. To the contrary, the evidence before the Court shows that Plaintiff was discharged for poor job attendance and performance. The undisputed facts are that at the time of his discharge, Plaintiff was on an extended initial probationary period because of poor job performance and attendance and that he had been warned and counseled about his poor job attendance and performance on at least two occasions (Docket No. 23 at 4-5). Furthermore, the Court finds that there is insufficient evidence before the Court to show that Defendant engaged in any illegal activity. While there may have been some delay in Defendant's implementation of the Wage Assignment, the undisputed facts before the Court are that Defendant began deducting $55.23 on August 22, 2004 and sent the sums deducted to the Receipting Unit on November 11, 2004 (Docket No. 19 at 6).

Accordingly, Plaintiff's Motion for Summary Judgment (Docket No. 13) on his retaliatory discharge claim, under both Tennessee common law and pursuant to Tenn. Code Ann. §50-1-304 is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 16) on Plaintiff's retaliatory discharge claim is GRANTED.

3. OUTRAGEOUS CONDUCT.

Next, Plaintiff argues that Defendant's conduct in causing him to be incarcerated because of its negligence and then terminating him for not showing up at work amounts to outrageous conduct. Plaintiff also alleges that because of Defendant's conduct, he was put in a cell with murderers and robbers, exposed to tuberculosis and assaulted by an inmate.

Under Tennessee law, there are three essential elements to a cause of action for outrageous conduct: 1) the conduct complained of must be intentional or reckless; 2) the conduct must be so outrageous that it is not tolerated by civilized society; and 3) the conduct complained of must result in serious mental injury. Bain v. Wells, 936 S.W. 2d 618, 622 (Tenn. 1997). It is not enough that a defendant acts with an intent which is tortuous or even criminal, or that he intends to inflict emotional distress, or even that his conduct is characterized by malice or a degree of aggravation which would entitle a plaintiff to punitive damages for another tort. Id. at 623. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Id. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!" Id.

In the present case, the Court finds that there is no evidence to suggest that Defendant's conduct in deducting and remitting Plaintiff's wages pursuant to the Wage Assignment or in terminating Plaintiff while he was incarcerated amounts to conduct that is so outrageous so as to form the basis of a claim for outrageous conduct. As stated earlier, the undisputed proof is that while there may have been some delay in the remittance of Plaintiff's wages to the Receipting Unit, Defendant did begin deducting $55.23 from Plaintiff's paycheck on August 22, 2004 and

remitted $607.53 to the Receipting Unit on November 11, 2004 (Docket No. 19 at 6). Furthermore, and as also stated earlier, there is no evidence to show that Defendant's actions were the proximate cause of Plaintiff's incarceration or that any complaint by Plaintiff regarding Defendant's conduct in connection with its remittance of his wages or the Wage Assignment itself was the motivating factor behind Defendant's decision to terminate Plaintiff. Finally, even if Plaintiff could prove that Plaintiff's incarceration was the result of Defendant's negligence or the existence of the Wage Assignment was the motivating factor behind Defendant's decision to terminate Plaintiff, this is not the type of conduct that would be recognized as "outrageous" under Tennessee law.

Accordingly, Plaintiff's Motion for Summary Judgment (Docket No. 13) on his claim for outrageous conduct is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 16) on Plaintiff's claim for outrageous conduct is GRANTED.

4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Finally, Plaintiff alleges that Defendant's conduct makes it liable for a claim of negligent infliction of emotional distress. Under Tennessee law, in order to establish a claim for negligent infliction of emotional distress a plaintiff must prove the elements of duty, breach of duty, injury or loss, causation in fact, and proximate cause. Dodson v. St. Thomas Hospital, 2005 WL 819725 (Tenn. Ct. App. Apr. 7, 2005) (citing Camper v. Minor, 915 S.W. 2d 437, 446 (Tenn. 1996)). Again, as stated earlier in this memorandum, Plaintiff has failed to carry his burden of establishing that Defendant owed him a duty of care with respect to the Wage Assignment or otherwise.

Accordingly, Plaintiff's Motion for Summary Judgment (Docket No. 13) on Defendant's claim for negligent infliction of emotional distress is DENIED and Defendant's Motion for Summary Judgment (Docket No. 16) on Plaintiff's claim for negligent infliction of emotional distress is GRANTED.

Given the Court's rulings, the Court finds that it is unnecessary to address at this time whether Plaintiff's claims should be dismissed under the doctrine of *"falsus in uno", "Falsus in Omnibus."*

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE